## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DENNIS THOMPSON #B-67474,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-00850-JPG** |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS DIRECTOR,** | ) | |
| **MICHAEL ATCHINSON,** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **JOHN TROST, C/O B. SMITH,** | ) | |
| **and JACQUELINE LASHBROOK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

This matter is now before the Court for consideration of a second amended complaint filed by Plaintiff Dennis Thompson on January 11, 2016.[1]  Plaintiff, who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794-94e.  Plaintiff claims that officials at Menard have denied him adequate medical care and accommodations for his eating disorder and weight-

---

[1] This Court dismissed Plaintiff's original complaint (Doc. 1) on September 11, 2015.  (Doc. 10).  Plaintiff was granted leave to file an amended complaint on or before October 14, 2015.  (*Id.*).  He filed a first amended complaint (Doc. 13) prior to that deadline, but sought leave to amend the first amended complaint (Doc. 14) after suffering additional injuries that are related to his claims in this action.  Given the early stage of this litigation and the fact that the defendants have not yet been served, the Court shall **GRANT** the motion.  The Clerk will be **DIRECTED** to file the proposed pleading as the "Second Amended Complaint" in CM/ECF.  The second amended complaint supersedes and replaces the first amended complaint, rendering it **VOID**.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004).

related health problems.  They have also retaliated against him for filing lawsuits to address these issues.

Plaintiff now sues John Doe (unknown Illinois Department of Corrections' ("IDOC") director), Michael Atchinson (IDOC deputy director), Richard Harrington (former warden), Jacqueline Lashbrook (former warden), Kimberly Butler (current warden), John Trost (doctor), and B. Smith (correctional officer) for violating his rights under the First Amendment, Eighth Amendment, ADA, and Rehabilitation Act.  He seeks monetary damages and injunctive relief.

## Merits Review Under 28 U.S.C. § 1915A

This matter is now before the Court for a preliminary review of the second amended complaint pursuant to 28 U.S.C. § 1915A.  Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual

allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The second amended complaint survives threshold review under this standard.

## Second Amended Complaint

According to the second amended complaint, Plaintiff suffers from an eating disorder. He is "addicted to food and sugar" and has experienced a dramatic weight gain during the past two years. Plaintiff's weight has increased from 280 pounds to 350 pounds. He is morbidly obese.

Plaintiff has developed weight-related health issues that include degenerative joint and disc disease, chronic back pain, sciatic nerve pain, edema, and loss of mobility. He can only stand for thirty seconds at a time without bending over. He has difficulty bathing and sleeping. Plaintiff requires assistance from other inmates when walking to the chow hall or library. He has been issued "slow walk, low bunk, and front cuff permits." Plaintiff claims that this is not enough. He also needs back surgery and more effective pain medication.[2]

Although Doctor Trost agrees that Plaintiff needs back surgery, he will not refer Plaintiff to a specialist. The doctor instead recommends that Plaintiff exercise as much and as often as possible. Plaintiff complains that he is unable to do so because his cell in the North Two Cell

---

[2] The pleading says nothing about a special diet.

House is too small.  Plaintiff cannot perform the sit-ups, push-ups, walking, and range of motion exercises that Doctor Trost recommends.[3]

When he tried to perform neck and shoulder exercises to increase his range of motion, Plaintiff hit his hand on the metal bunk bed and cut his finger.  Doctor Trost treated the injury. However, Plaintiff fears that he will sustain additional injuries in his cramped cell, if he remains in the North Two Cell House.  Plaintiff worries that he will be "fatally injured" by his television, which sits on his bed.  He describes the device as a "bubble hard thick glass screened model" and alleges that it could fatally injure him if he kicks through the screen while sleeping. Plaintiff's problems will be solved by transferring him to the South Cell House; he makes it clear that no other housing arrangement, or solution, will do.

Plaintiff contends that Defendants Harrington, Lashbrook, and Butler moved him to the North Two Cell House on or around November 19, 2013, in retaliation for filing lawsuits against prison officials.  They have since refused to transfer him to a bigger cell in a different housing unit for the same reason.  The cells in the North Two Cell House are smaller, house inmates with higher aggression levels,[4] and offer fewer privileges.

Plaintiff was temporarily moved from his cell on December 29, 2015, and he also complains about this housing arrangement.  When heavy rainfalls caused the Mississippi River to rise and threaten to flood Menard, Defendants Atchinson, Butler, and Smith decided to move Plaintiff and numerous other inmates to Menard's gym.  For a period of five days, Plaintiff was required to sleep on the gym floor, bathe in cold water, and share two porcelain toilets with thirty inmates.  Female prison guards and "tours" of females observed Plaintiff using the toilet and bathing.  He had to sleep beside a 450-pound inmate, who was immobile and could have (but did

---

[3] The pleading also mentions nothing about exercise opportunities that are available to Plaintiff outside of his cell, in the gym, prison yard, or elsewhere.
[4] Plaintiff states that he is considered a low aggression inmate and has held this status for ten years.

not) defecate on Plaintiff.  On January 2, 2016, one of the two porcelain toilets in the gym broke under Plaintiff's weight, spilling him and his feces onto the floor.  Plaintiff injured his wrist, hand, and fingers in the process.  He was humiliated by the incident.

Plaintiff now wishes to transfer to another cell house with larger cells, more privileges, and less aggressive inmates.  Warden Butler told him that he would not be transferred, unless Doctor Trost specifically asked her to do so for medical reasons.  When Plaintiff asked Doctor Trost to make this recommendation, the doctor laughed and stated, "your kidding, right Thompson. The warden is the boss. She don't need me to call and tell her nothing. . . She can take one look at you and see that you can not exercise in North two cells and move you."

Plaintiff sues the IDOC Director, Deputy Director Atchinson, Warden Harrington, Warden Lashbrook, Warden Butler, Doctor Trost, and C/O Smith for violating his rights under the First Amendment, Eighth Amendment, ADA, and Rehabilitation Act.  He seeks monetary damages and injunctive relief, including an order referring him to an outside back specialist and an order transferring him back to the South Cell House.  In addition, Plaintiff seeks a temporary restraining order prohibiting Menard officials from employing "retaliatory gamesmanship" by transferring him to any cell house other than the one he now requests while the action is pending.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's second amended complaint into the following enumerated counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Count 1:       Defendants Harrington, Lashbrook, Butler, and Trost violated Plaintiff's rights under the Eighth Amendment by providing him with inadequate medical care for his degenerative joint and disc disease and obesity.

Count 2:       Defendants Harrington, Lashbrook, Butler, and Trost exhibited deliberate indifference to Plaintiff's cut finger, in violation of the Eighth Amendment.

Count 3:       Defendants Harrington, Lashbrook, and Butler retaliated against Plaintiff for filing lawsuits by moving him to and refusing to transfer him from the North Two Cell House, which has smaller cells, offers fewer privileges, and houses higher aggression inmates than other cell houses.

Count 4:       Defendants IDOC Director and Butler's policy, custom, or practice of making housing decisions without input from the medical staff violates Plaintiff's rights under the Eighth Amendment.

Count 5:       Defendants Harrington, Lashbrook, Butler, and Trost violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e, by denying him accommodations for his degenerative joint and disc disease and his obesity by placing him in a larger cell.

Count 6:       Defendants Harrington, Lashbrook, Butler, and Trost subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they assigned him to the North Two Cell House.

Count 7:       Defendants Atchinson, Butler, and Smith subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they housed him in the gym for five days in anticipation of a flood on December 29, 2015.

Count 8:       Wexford provides no legitimate care or counseling for inmates with eating disorders, in violation of their right to receive adequate medical care under the Eighth Amendment.

As discussed in more detail below, **Count 1** shall proceed against Doctor Trost and Warden Butler (official capacity only); **Count 2** shall be dismissed with prejudice; **Count 3** shall proceed against Wardens Harrington, Lashbrook, and Butler; **Count 4** shall proceed against the

IDOC Director and Warden Butler; **Count 5** shall proceed against the IDOC Director (official capacity only); **Count 6** shall proceed against Doctor Trost and Wardens Harrington, Lashbrook, and Butler; **Count 7** shall proceed against Deputy Director Atchinson, Warden Butler, and C/O Smith; and **Count 8** shall be dismissed without prejudice.

### **Deliberate Indifference to Medical Needs Claims (Counts 1, 2, and 8)**

The Eighth Amendment "imposes a duty on government officials to provide medical care to prisoners." *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Prison officials violate the Constitution when they are deliberately indifferent to a prisoner's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104). "A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is 'objectively sufficiently serious.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind," which is deliberate indifference. *Townsend*, 759 F.3d at 689 (citing *Farmer*, 511 U.S. at 834; *Greeno*, 414 F.3d at 653). The prison official must "know of and disregard an excessive risk to inmate health." *Greeno*, 411 F.3d at 653. Against this backdrop, the Court will consider each of Plaintiff's claims that the defendants were deliberately indifferent to his back problems and obesity (**Count 1**), his cut finger (**Count 2**), and his need for food addiction counseling (**Count 8**).

**Count 1 – Back Problems and Obesity**

Plaintiff claims that his back problems[5] and obesity are both serious medical conditions. A medical condition is considered serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Doctor Trost allegedly diagnosed both conditions as being serious and requiring medical treatment. For screening purposes, the objective component of this claim is satisfied. The question becomes whether the defendants responded to these medical conditions with deliberate indifference.

**A.     Back Problems**

The allegations support a claim of deliberate indifference against Doctor Trost, but no other defendants. Doctor Trost allegedly told Plaintiff that he needs back surgery, but refused to refer him to a specialist or provide him with adequate pain medication. Meanwhile, Plaintiff's condition grew worse. Under the circumstances, the Court cannot dismiss the back injury claim in Count 1 against Doctor Trost.

However, this claim cannot proceed against Wardens Harrington, Lashbrook, and Butler. The wardens had no personal involvement in any treatment decisions for Plaintiff's back. They appear to have been named in connection with this claim because of their supervisory roles in the prison. Section 1983 does not establish a system of vicarious, or supervisory, liability. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Liability hinges on each defendant's "knowledge and actions, not on the knowledge and actions of persons they supervise." *Id.* at 594. Because Plaintiff's theory of liability against these defendants is rooted in the doctrine of *respondeat superior*, Count 1 cannot proceed against them.

---

[5] For purposes of this screening order, "back problems" encompass the following: degenerative joint and disc disease, lower back pain, sciatic nerve pain, loss of mobility, and related edema.

In summary, that portion of **Count 1** addressing Plaintiff's back problems shall receive further review against Doctor Trost.  Because Plaintiff seeks a referral to a back specialist, the Court will allow the claim to proceed against Warden Butler, in her official capacity, for the sole purpose of carrying out any injunctive relief that is ordered.  *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).  However, **Count 1** shall be dismissed without prejudice against all other defendants.

**B.**     **Obesity**

The allegations do not suggest that any of the defendants responded to Plaintiff's obesity with deliberate indifference.  After identifying Plaintiff's weight as a serious medical condition, Doctor Trost provided him with a number of exercises to perform as often as possible.  Plaintiff was also issued "slow walk, low bunk, and front cuff permits."  Doctor Trost's recommendation to exercise certainly does not amount to deliberate indifference.  One would expect a doctor to make this recommendation.

Plaintiff does not disagree with the treatment plan, and it would make no difference if he did.  Deliberate indifference does not arise from a mere disagreement with the form of treatment an inmate receives.  Inmates are not entitled to demand specific treatment or even "the best care possible."  *Edgar v. Forbes*, 112 F.3d 262, 267 (7th Cir. 1997).  Under the Eighth Amendment, an inmate is "entitled to reasonable measures to meet a substantial risk of serious harm" to that inmate.  *Id*.  Moreover, "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to support a deliberate indifference claim.  *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).  Deliberate indifference requires inmates to clear a higher threshold, and the second

amended complaint does not clear this hurdle.  The allegations do not suggest that the defendants exhibited deliberate indifference toward Plaintiff's obesity.  For this reason, the obesity claim in **Count 1** does not survive preliminary screening and shall be dismissed without prejudice.

This claim is more appropriately addressed as one for unconstitutional conditions of confinement.  In essence, it arises from Plaintiff's housing arrangement, not the denial of proper medical care for his obesity.  Count 6 addresses his conditions of confinement claim.  The Court will discuss this claim in more detail below.

**Count 2 – Cut Finger**

The second amended complaint supports no claim against the defendants for Plaintiff's cut finger.  Plaintiff allegedly suffered a "serious" cut when performing his range of motion exercises in the cell, and Doctor Trost treated the wound.  These allegations satisfy neither component of his Eighth Amendment medical needs claim.

As for the objective component, Plaintiff offers only vague and conclusory allegations regarding the seriousness of the injury.  He states that the cut on his finger was "serious." The Court cannot accept "as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *See Brooks*, 578 F.3d at 581.  The objective component of this claim is not satisfied.

Further, no allegations suggest that anyone responded with deliberate indifference. Plaintiff alleges that Doctor Trost treated the injury.  He does not maintain that the treatment was inadequate, ineffective, or delayed.  Under the circumstances, **Count 2** shall be dismissed with prejudice against all of the defendants.

**Count 8 – Food Addiction Counseling**

Plaintiff's claim in **Count 8** against Wexford for failing to make food addiction counseling available to him must be dismissed without prejudice. Plaintiff names Wexford in connection with this claim, but Wexford is not listed as a defendant in the caption of the second amended complaint. When parties are not identified as defendants in the caption, this Court will not treat them as parties to the action, and any claims against them should be considered dismissed without prejudice. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif]ied] in the caption"). **Count 8** shall be dismissed without prejudice.

<u>**Conditions of Confinement Claims (Counts 4, 6, 7)**</u>

The Eighth Amendment also protects prisoners from conditions of confinement that pose a substantial risk of serious harm to an inmate's health and safety. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prisoners are entitled to confinement under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Farmer*, 511 U.S. at 832. A prison official may be liable for deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 842; *James v. Milwaukee Cnty.*, 956 F.2d 696, 700 (7th Cir. 1992); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Against this backdrop, the Court will consider Plaintiff's claim that his Eighth Amendment rights have been violated by the

manner in which housing decisions are made at Menard (**Count 4**), by his placement in the North Two Cell House (**Count 6**), and by his placement in the gym (**Count 7**).

## Count 4 – Housing Decisions

Plaintiff alleges that the IDOC Director and Warden Butler are responsible for a policy, practice, or custom of making inmate housing decisions without input from medical staff, in violation of his Eighth Amendment rights.   A policy, custom, or practice that results in a constitutional deprivation can give rise to liability, if it was the driving force behind the deprivation.  According to Plaintiff, this policy resulted in his continued placement in a cramped cell and a violation of his Eighth Amendment rights.   **Count 4** shall receive further review against the IDOC Director and Warden Butler.   Plaintiff names no other defendants in connection with this claim, and it is considered dismissed with prejudice against them.

## Count 6 – North Two Cell House

Plaintiff also alleges that the defendants subjected him to unconstitutional conditions of confinement when they placed him in a cell in the North Two Cell House that was too small for exercise. Inmates have been allowed to proceed on claims for unconstitutional conditions of confinement, when they complain of cramped living quarters and inadequate exercise opportunities. *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable denial of exercise claim found where prisoner was housed in a cramped cell with "no room" to exercise and "not permitted to recreate 'for periods of up to seven weeks in succession'" and, at most, was called "once every two weeks for sessions of no longer than one hour at one time")).  The Seventh Circuit has explained that the "lack of exercise could rise to a constitutional violation '[w]here movement is denied and muscles are allowed to atrophy, (and) the health of the individual is threatened.'"   *Harris v.*

*Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).

Plaintiff's claim barely passes muster.  He does not describe what opportunities he had to exercise outside of his cell.  He mentions nothing about the denial of yard privileges, the lack of gym access, etc.  Even so, the Court cannot dismiss Count 6.

According to the allegations, Doctor Trost instructed Plaintiff to exercise as much as possible.  Plaintiff claims that he cannot exercise at all in his cell, and Doctor Trost and Wardens Harrington, Lashbrook, and Butler know this.  His weight has increased dramatically (from 280 to 350 pounds) since his transfer to the North Two Cell House.  He cannot stand without bending over.  His health has generally declined.

Whether Plaintiff has adequate opportunities to exercise outside of his cell remains to be seen.  But given the doctor's special instructions to exercise as much as possible and Plaintiff's deteriorating health, the Court cannot dismiss **Count 6** against Defendants Trost, Harrington, Lashbrook, or Butler.  Plaintiff names no other defendants in connection with this claim, and it is considered dismissed without prejudice against them.

## Count 7 - Gym

Plaintiff also claims that he was subjected to unconstitutional conditions of confinement in the gym, when he was housed there for five days beginning on December 29, 2015.  Plaintiff slept on the gym floor, bathed in cold water, and shared two porcelain toilets with thirty inmates.  One of these toilets broke under his weight—something he warned the defendants would occur based on a prior experience.  In addition, female prison guards and "tours" of females observed him using the toilet and bathing.  Plaintiff was allegedly injured and humiliated by this experience.

**Count 7** passes preliminary review and shall proceed against Deputy Director Atchinson, Warden Butler, and C/O Smith. *See Courtney v. Devore*, 595 Fed. Appx. 618 (7th Cir. 2014) (cross-sex monitoring of bathroom activity may violate the Eighth Amendment); *Rhodes*, 452 U.S. at 347 ("Adequate . . . facilities to wash and use the toilet are among the 'minimal civilized measures of life's necessities' that must be afforded prisoners."). Because Plaintiff names only Deputy Director Atchinson, Warden Butler, and C/O Smith in connection with the claim, it is considered dismissed without prejudice against all other defendants. The Court takes no position regarding the ultimate merits of this claim or the exhaustion of administrative remedies with respect to it.

**Count 3 – Retaliation**

Plaintiff shall be allowed to proceed with his retaliation claim against Wardens Harrington, Lashbrook, and Butler. In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

In this case, Plaintiff alleges that Wardens Harrington and Lashbrook made the decision to transfer him to the North Two Cell House because he filed too many lawsuits, and Warden Butler refused to move him out of the unit for the same reason.  Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution.  *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley,* 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit).  The chronology of events presents a colorable claim of retaliation against Defendants Harrington, Lashbrook, and Butler. Therefore, the Court is unable to dismiss **Count 3** against these defendants.  No other defendants are mentioned in connection with this claim, and it is considered dismissed without prejudice against them.

## Count 5 - ADA/Rehabilitation Act

At this early stage in litigation, the Court will also allow Plaintiff's ADA and Rehabilitation Act claim to proceed.  This claim arises from the fact that Plaintiff was denied proper accommodations for his disability when he was placed in a cell that was too small for exercise.  Title II of the ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132. The Rehabilitation Act also prohibits discrimination against qualified individuals based on a physical or mental disability.  *See* 29 U.S.C. §§ 794-94e.  Discrimination under both statutes includes the failure to accommodate a disability.  *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir.

2015).  In this particular suit, the analysis under the ADA and Rehabilitation Act is the same, except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons.  *Id.* at 592 (citing *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)).

Standing alone, Plaintiff's morbid obesity may not render him disabled under the Acts. *See Revolinski v. Nat'l Railroad Passenger Corp. & Amtrak*, 2010 WL 2606316 (E.D. Wis. 2010) (parties agreed that obesity may be considered a disability for purposes of the Acts only in the "rare case where the obesity is caused by a physiological disorder") (citations omitted). But this is not the only medical condition described in the second amended complaint. Plaintiff also alleges that he suffers from serious back problems that are linked to his obesity. Each condition exacerbates the other.  These allegations suggest at this early stage that Plaintiff is disabled under the ADA and Rehabilitation Act.

The only question, then, is whether he has been denied access to programs, activities, or services at the prison.  Plaintiff claims that he has.  Because of his small cell, Plaintiff is absolutely unable to exercise.  The defendants know this and will not move him to a larger cell. "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.  The Court will allow the ADA and Rehabilitation Act claim to proceed.

However, Count 5 cannot proceed against the individual defendants.  Individual employees of the IDOC cannot be sued under the ADA or Rehabilitation Act.  *Id.* at 670. The proper defendant is the relevant state department or agency.  *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)).  Plaintiff has named the unknown IDOC Director as one of the defendants in this action.  Plaintiff shall be allowed to proceed with

**Count 5** against the IDOC Director, in his or her official capacity.  This claim shall be dismissed with prejudice against the IDOC Director, in his or her individual capacity, and against all other defendants, in their individual and official capacities.

### Request for Interim Relief

In the second amended complaint, Plaintiff mentions that he still wants a temporary restraining order ("TRO") prohibiting the defendants from employing "retaliatory gamesmanship" by transferring him to any cell house other than the one he now requests in the South Cell House.  Plaintiff included a similar request in his original complaint, and the Court denied it.  (Doc. 6).

Plaintiff's latest request for a TRO is denied for the same reasons the Court denied it the first time.  A Court may not issue a TRO unless "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  *See* Fed. R. Civ. P. 65(b)(1)(A). The transfer described in the second amended complaint occurred in 2013.  Plaintiff describes no threats by the defendants to move him to the East Cell House, West Cell House, or anywhere else.  And, at this point, the Court lacks sufficient information to conclude that an immediate transfer to the South Cell House is warranted.  Plaintiff's fear of a retaliatory transfer is merely speculative.  The request for a TRO on this basis is **DENIED**.

In the second amended complaint, Plaintiff also requests "injunctive relief," in the form of an order referring him to an outside back specialist and an order transferring him back to the South Cell House.  In conjunction with these requests, he did not ask for a TRO or a preliminary injunction.  He did not refer to Rule 65(a) or (b) of the Federal Rules of Civil Procedure. The Court does *not* construe his request for "injunctive relief" in the second amended complaint

as a request for immediate relief. **Should Plaintiff wish to request a TRO or a preliminary injunction, he should file a separate motion pursuant to Rule 65(a) or (b) indicating the exact form of relief he seeks, the reasons why he seeks said relief, and the factual allegations supporting his request. He may do so at any time during the pending action.**

<u>Disposition</u>

**IT IS HEREBY ORDERED** that the motion to amend/correct amended complaint (Doc. 14) is **GRANTED**. The Clerk is **DIRECTED** to file the proposed pleading as the "Second Amended Complaint" in CM/ECF. The Clerk is also **DIRECTED** to **ADD** Defendants **MICHAEL ATCHINSON** and **C/O SMITH** as parties to this action on the docket sheet in CM/ECF.

**IT IS ORDERED** that the second amended complaint supersedes and replaces the amended complaint (Doc. 13), rendering it **VOID**.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, and **COUNT 8** is **DISMISSED** without prejudice for the same reason.

**IT IS ORDERED** that the back problems claim in **COUNT 1** will proceed against Defendant **TROST** and **BUTLER** (official capacity only). All other aspects of **COUNT 1** are **DISMISSED** without prejudice against the defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 3** will proceed against Defendants **HARRINGTON, LASHBROOK,** and **BUTLER**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 4** will proceed against Defendant **IDOC DIRECTOR**

and **BUTLER**.  This claim is **DISMISSED** with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

     **IT IS ORDERED** that **COUNT 5** will proceed against Defendant **IDOC DIRECTOR** (official capacity only). This claim is **DISMISSED** with prejudice against Defendant IDOC Director (individual capacity only) and all other defendants for failure to state a claim upon which relief may be granted

     **IT IS ORDERED** that **COUNT 6** will proceed against Defendants **TROST**, **HARRINGTON**, **LASHBROOK**, and **BUTLER**.  This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

     **IT IS ORDERED** that **COUNT 7** will proceed against Defendants **ATCHINSON**, **BUTLER**, and **SMITH**.  This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

     With respect to **COUNTS 1, 3, 4, 5, 6,** and **7**, the Clerk of Court shall prepare for **DEFENDANTS IDOC DIRECTOR, TROST, HARRINGTON, LASHBROOK, BUTLER, ATCHINSON,** and **SMITH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the second amended complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 11, 2016**

*s/J. Phil Gilbert*
**U.S. District Judge**
