IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-850-NJR-DGW |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, RICHARD | ) |
| HARRINGTON, KIMBERLY BUTLER, | ) |
| JACQUELINE LASHBROOK, | ) |
| MICHAEL ATCHISON, and | ) |
| C/O SMITH, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Preliminary Injunction filed by Plaintiff on February 29, 2016 (Doc. 26), the Supplement filed by Plaintiff on March 7, 2016 (Doc. 29), the Supplement filed by Plaintiff on July 18, 2016 (Doc. 53), the Responses filed by Defendants on August 11, 2016 (Docs. 71 and 72), and the Reply filed by Plaintiff on August 22, 2016 (Doc. 77).

### BACKGROUND

Plaintiff Dennis Thompson, an inmate currently incarcerated at the Menard Correctional Center, is proceeding on a Second Amended Complaint which alleges claims pursuant to 42 U.S.C. § 1983 related to his serious health need, morbid obesity, and related conditions. Specifically, the Second Amended Complaint alleges six counts related to his medical care, prison accommodations, and retaliation for filing lawsuits

(Doc. 16). In his request for injunctive relief, Plaintiff seeks a referral to a specialist for a surgery consultation regarding his spine and hip and a transfer to the South Cell House. In supplements, Plaintiff further requests various medical and living accommodations.

Plaintiff claims that he was diagnosed with morbid obesity in May 2010 but that the health concerns that are the subject of this action began when he was moved to the North Cell House at Menard on November 19, 2013. Plaintiff claims that the cell he was moved to is smaller than his former cell in the South Cell House, thus preventing him from performing necessary exercises to combat the deleterious effects on his health caused by his excessive weight (Doc. 26, pp. 5-7). These effects include degenerative disc disease in his spine and osteoarthritis in his right hip which in turn have led to mobility problems (*Id*. 7).

In a supplement, Plaintiff states that on February 3, 2016, he was scheduled for a surgery consultation with a specialist with respect to his hip; the date of the consultation was set for April 8, 2016 (Doc. 29, Doc. 53, p. 2)). During the consultation, it was recommended that Plaintiff have a total hip replacement in the future after he "gets as much mileage" out of his current hip as he can. The specialist also recommended that Plaintiff not walk up and down steps and wrote a prescription for pain management medication (Doc. 53, pp. 2-3). Plaintiff did not see a prison doctor until two weeks after the consultation, where he was informed that the new medication the specialist prescribed was not in stock and could not be provided until Dr. Trost approved (*Id*., p. 3). Plaintiff alleges that Dr. Trost has never given him the stronger pain medication prescribed by the specialist and has never approved the specialist's mobility restrictions,

thus exacerbating his medical condition (*Id.*). Plaintiff believes that if he is not given immediate relief, he may be forced to use a wheelchair. Accordingly, he seeks an Order that would move him to a larger cell where he can exercise, which, in turn, will reduce the progression of his joint diseases, help him maintain and/or lose weight, and otherwise result in a better health outcome and continued independent mobility.

Plaintiff's medical records reveal he has been grossly obese since at least January 2012 (Doc. 26, p. 13), has had numerous x-rays of his spine and hip, has been prescribed various pain medications since that time, and has been directed to perform some exercise. An x-ray of his spine taken on May 25, 2010, revealed minimal degenerative changes (at the thoracic spine) and a loss of the curvature of his cervical spine (Doc. 26-1, p. 5). An x-ray taken two years later, on April 25, 2012, noted no changes to Plaintiff's cervical spine (*Id.*, p. 6). The following year, an x-ray revealed no issues with his lumbar spine (*Id.*, p. 7); but on December 4, 2015, it is noted that there "is progression of degenerative disc disease" in the lumbar spine since June 11, 2013 (*Id.*, p. 9).

A January 18, 2016 x-ray revealed "moderate to severe osteoarthritis" in Plaintiff's right hip (Doc. 26-1, p. 10). Plaintiff was approved for an outside consultation on March 9, 2016 (Doc. 71-3, p. 11), and he was examined by Dr. Bret H. Miller, the specialist, on April 8, 2016 (Doc. 71-8, p. 1). Dr. Miller's report, which was signed and submitted to Dr. Trost on August 8, 2016, states that Plaintiff is not a good candidate for surgery because of his size, that he "needs to be doing some physical therapy stretching and mobilization of his hips," and that "we are going to have him use Mobic 15 mg daily" (*Id.*, p. 3). The report further notes that Dr. Miller gave Plaintiff two refills of Mobic and states: "We

will see how he does with the Mobic and home exercises" (*Id.*). Plaintiff was directed to return on an as needed basis (*Id.*).

Dr. Miller's report contradicts the statements made in Plaintiff's supplemental brief (Doc. 53) in that no mobility limitations were ordered (i.e., Dr. Miller did not indicate in his report that Plaintiff is not to walk up and down stairs), and no additional medication was ordered other than Mobic, an anti-inflammatory that Plaintiff had received in the past from the prison and was clearly available (Doc. 71-1, p. 1). As of April 26, 2016, Plaintiff was given a permit which called for a low bunk, shower in gallery, slow walk, and front cuff (but not low gallery), which expires on April 26, 2017 (Doc. 71-7, p. 7).

Plaintiff nonetheless contends that he requires injunctive relief in order to have a specialist exam his back condition (which he claims is worse than his hip condition), to compel the jail to move him back to the South Cell House where he will be able to exercise in his cell,[1] to compel Dr. Trost to comply with Dr. Miller's instructions, to compel Dr. Trost to provide additional and more effective pain medication, and to compel additional diagnostic tests to monitor the progression of his degenerative joint conditions.

## DISCUSSION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an

---

[1] But Plaintiff does not want to move to other cell houses that contain more aggressive inmates.

injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

To qualify for injunctive relief, Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success–in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

Once Plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. The Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

As an initial matter, the Court notes that Defendant Trost has been voluntarily dismissed from this matter (Doc. 91). As such, much of Plaintiff's requests for injunctive

relief appear to be moot. The remaining Defendants have filed a motion for summary arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit (Docs. 78).[2] A hearing is set on the motion, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), before Magistrate Judge Wilkerson on October 6, 2016 (Doc. 56).

Exhaustion of available administrative remedies is a precondition to suit. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Thus, Plaintiff may not file this action and seek relief from the Court unless he has exhausted his administrative remedies. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-5 (7th Cir. 1999). Even if Plaintiff's claim for preliminary injunctive relief has some merit, he would not be entitled to such relief if the Court finds that he failed to exhaust his administrative remedies. *See e.g. McClure v. Yurkovich*, 2013 WL 1755505, *2-3 (C.D. Ill. 2013).

In light of the extraordinary nature of the relief that Plaintiff requests, the dismissal of Dr. Trost and the claims against him, the pending exhaustion motion, and the *Pavey* hearing set for October 6, 2016, the Court finds it will be more efficient to consider Plaintiff's request for injunctive relief once the issue of exhaustion has been resolved. Once this Court enters an Order on exhaustion, Plaintiff may refile his motion for preliminary injunctive relief with respect to any remaining Defendant.

---

[2] The remaining Defendants are all employed by the Illinois Department of Corrections. Pursuant to the Screening Order entered on February 11, 2016, Plaintiff is proceeding on claims designated as Counts 1, 3, 4, 5, 6, and 7 (Doc. 15). The IDOC Defendants' exhaustion motion seeks summary judgment on Counts 3, 4, 5, 6, and 7 (which they improperly designate as claims 2, 3, 4, 5, and 6, respectively). Dr. Trost is a named Defendant as to Counts 1 and 6. Count 6 includes claims against IDOC Defendants and remains notwithstanding Dr. Trost's dismissal. Count 1 alleges, however, that he "violated Plaintiff's rights under the Eighth Amendment by providing him with inadequate medical care for his degenerative joint and disc disease and obesity." Defendant Butler, in her official capacity, was named in this count, "for the sole purpose of carrying out any injunctive relief that is ordered." The dismissal of Dr. Trost necessarily means that Count 1 has also been dismissed by the Court's September 20, 2016 Order (Doc. 91). Therefore, the only counts that remain in this matter are 3, 4, 5, 6, and 7, which are all related to Plaintiff's unconstitutional conditions of confinement claims.

## CONCLUSION

For the reasons set forth above, the Motion for Preliminary Injunction filed by Plaintiff Dennis Thompson on February 29, 2016 (Doc. 26) is **MOOTED in part and DENIED without prejudice in part**. Plaintiff may refile his motion once the issue of exhaustion has been resolved.

**IT IS SO ORDERED.**

DATED: September 23, 2016

*(signature)*

_____
**NANCY J. ROSENSTENGEL**
United States District Judge