IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENNIS THOMPSON,                                )
                                                )
        Plaintiff,                              )
                                                )
v.                                              )          Case No. 3:15-cv-850-NJR-DGW
                                                )
ILLINOIS        DEPARTMENT       OF )
CORRECTIONS, RICHARD HARRINGTON, )
KIMBERLY      BUTLER,      JACQUELINE )
LASHBROOK,   MICHAEL   ATCHINSON, )
and C/O SMITH,                                  )
                                                )
        Defendants.                             )

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Atchison, Butler, Harrington, IDOC, Lashbrook, and Smith (Doc. 78) on August 24, 2016 be **GRANTED IN PART and DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

In November 2013, Plaintiff was transferred to a cell in the North Two Cell House ("NTCH") at the Menard Correctional Center.  Plaintiff, an inmate who is obese, is required to do exercises in order to manage is weight and address his other medical conditions.  He claims

that his new cell was too small to exercise in, that his new cellblock housed inmates with higher aggression levels, and that it had fewer privileges than his previous cell.  Plaintiff believes that the decision to move him to the offending cell was made by Wardens Harrington and Lashbrook and that it was in retaliation for filing lawsuits.  He further contends that Warden Butler refused to move him from the cell for the same reasons.

About two years later, Plaintiff was again moved, this time to the gym for a period of 5 days beginning on December 29, 2015.  This temporary housing assignment was orchestrated by Defendants Atchison, Butler, and Smith.  Plaintiff claims that he was required to sleep on the gym floor, which was covered in cold water, that he was required to share two toilets with thirty other inmates, that one broke under his weight, and that he was observed by females while he was using the toilet and bathing.  These events caused humiliation and injury.

Plaintiff's original complaint was filed on August 3, 2015; the events of December 2015 were added in a second amended complaint filed on February 11, 2016 (Doc. 16).  In an Order entered on that same day pursuant to 28 U.S.C. § 1915A, and pursuant to subsequent Orders entered on September 20, 2016 (Doc. 91) and September 23, 2016 (Doc. 93), Plaintiff is proceeding on the following claims:

> Count 3: Defendants Harrington, Lashbrook, and Butler retaliated against Plaintiff for filing lawsuits by moving him to and refusing to transfer him from the North Two Cell House, which has smaller cells, offers fewer privileges, and houses higher aggression inmates than other cell houses.

> Count 4: Defendants IDOC Director and Butler's policy, custom, or practice of making housing decisions without input from the medical staff violates Plaintiff's rights under the Eighth Amendment.

> Count 5: Defendant IDOC Director violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e, by denying him accommodations for his degenerative joint and disc disease and his obesity by placing him in a larger cell.

Count 6: Defendants Harrington, Lashbrook, and Butler, subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they assigned him to the North Two Cell House.

Count 7: Defendants Atchinson, Butler, and Smith subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they housed him in the gym for five days in anticipation of a flood on December 29, 2015.

(Doc. 15).

Defendants seek summary judgment on the affirmative defense that Plaintiff failed to exhaust his administrative remedies (Doc. 79). Plaintiff responded on September 7, 2016 (Doc. 87). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on October 6, 2016 where Plaintiff appeared by video-conference and Defendants appeared by counsel. Pursuant to that hearing, Defendants submitted a supplement on October 18, 2016 (Doc. 102).

### FINDINGS OF FACT

At the hearing, Plaintiff testified that he submitted a grievance, on **January 4, 2014**, regarding his housing and the retaliatory transfer at the hands of Defendants Butler and Harrington.[1] He testified that at the time, he was housed in the NTCH, he put the grievance (which had attached medical records showing his medical needs) in the bars, and it was picked up by the third shift at night. He did not receive a response. The Court finds Plaintiff credible in his testimony, that he submitted this grievance and that he did not receive a response.[2]

---

[1] Plaintiff specified that in 2013, he had a case pending in the United States District for the Central District of Illinois that included many defendants and that resulted in numerous subpoenas being issued to the Warden at Menard CC (i.e. Defendant Harrington). He also had another suit against the Warden in his official capacity and yet another (in this District) that had been dismissed for failure to pay the initial partial filing fee. Plaintiff had "words" with Warden Harrington about these cases and the multiple subpoenas around the time he was moved.

[2] Plaintiff provided significant details about the grievance submission process and appeared to be sincere and truthful in his statements. Plaintiff testified that he didn't have a copy of the grievance because inmates are not permitted to photocopy their grievances unless there is an

The parties agree that Plaintiff submitted a grievance dated **August 3, 2014** (Doc. 51-1, pp. 5-6).  In this grievance, which concerns staff conduct, medical treatment, and retaliation, Plaintiff stated that he had been diagnosed as obese, with degenerative joint disease and other medical conditions, and that he must exercise.[3]  He complained that his cell in the NTCH was too small for exercise, that he does not have sufficient yard time, and that the yard and gym that he did have access to floods and were otherwise unsuitable.  He claimed that he was moved to his current cell in retaliation for filing lawsuits.  He requested a transfer to the South Cell House.  Plaintiff does not name any particular person in this grievance.  A counselor responded to the grievance on August 5, 2014, indicating that placement is an administrative decision.  A grievance officer recommended that the grievance be denied on October 9, 2014 and the warden concurred on October 24, 2014.  Plaintiff appealed to the Administrative Review Board (ARB) on October 30, 2014.  The ARB rejected Plaintiff's grievance as untimely on June 1, 2015.  In doing so, the ARB indicated: "You have been assigned to N2 since November 2013.  Dr. diagnosis is dated July 2010."

Plaintiff further testified that he submitted a grievance around **October 14, 2014** regarding his medical situation and retaliation.  At the hearing Plaintiff indicated that he was having multiple conversations with Defendants Butler and Lashbrook in passing and that they told him to have Dr. Trost contact them regarding his medical condition.  Plaintiff stated that he

---

institutional response. This procedure is corroborated by Dia Rodely, a law librarian at Menard CC (Doc. 102-1).  While there is some discrepancy between when each warden was stationed at Menard and when Plaintiff wrote a grievance about that particular warden, such discrepancies do not disturb this Court's credibility finding because Plaintiff generally appeared to testify truthfully and to the best of his recollection.

[3] The attached medical report is unreadable; however, the date, July 21, 2010 can be made out. Plaintiff has attached a more readable version of the report to his response (Doc. 87-1, p. 9).  The doctor's note indicates that Plaintiff is "advised to lose wt and to continue to exercise as much as possible."

spoke to Dr. Trost who refused to get involved.  He then wrote out the grievance, concerning housing and retaliation and included complaints about Dr. Trost's refusal.  Plaintiff testified that this grievance concerned Warden Butler's retaliation because she too had been receiving subpoenas related to his other lawsuits when she became the Warden at Menard CC.[4]  Plaintiff received the grievance back in about a week with a sticky note on it indicating that the issue had been dealt with earlier (with respect to the August 2014 grievance) and that the issue was moot. It is undisputed that Plaintiff did nothing further with this grievance.  There are no further grievances related to Plaintiff's housing prior to December 2015.

Plaintiff states in his papers that he submitted a grievance, given the number "40-1-16," that grieved the temporary housing in December 2015 (Doc. 87, p. 11).  The record does not contain a copy of the grievance; however, Plaintiff has provided a copy of the grievance officer's evaluation.  The grievance officer states that Plaintiff submitted a grievance on January 4, 2016 grieving the fact that he had to sleep on the floor in December 2015 and that the living conditions were otherwise unacceptable (Doc. 87-2, p. 7).  The grievance officer recommended that it be denied on March 30, 2016 and the Warden concurred on April 2, 2016.  Plaintiff states that the appealed to the ARB, as evidenced by a mail payment slip (Doc. 87-2, p. 5).  ARB records, however, do not reflect that it received this appeal (Doc. 51-1, p. 8).

When Plaintiff was placed in the offending cell in November 2013, Defendant Harrington was the Warden at Menard CC (Doc. 102).  Defendant Lashbrook became an assistant warden on February 1, 2014 (*Id.*).  Defendant Butler became the Warden at Menard on April 16, 2014 upon Warden Harrington's retirement (*Id.*).

---

[4] Plaintiff believed that Warden Butler became the warden at Menard CC around April 2014 and that Assistant Warden Lashbrook came to Menard CC in the Spring or Summer of 2014.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Perez v. Wis. Dept. of Corr.*,182 F.3d 532,

534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO

in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

By failing to respond to the **January 2014** grievance, the administrative remedies process was rendered unavailable and Plaintiff is deemed to have exhausted his claims against Defendant Harrington and his general claims that his disability was not being accommodated (parts of

Counts 3, Count 4, Count 5, and parts of Count 6).[5]  The grievance, however, does not exhaust as to Lashbrook and Butler because they were not employed at Menard CC at the time nor did they have any control, input, or influence on Plaintiff's cell transfer in November 2013 and subsequent housing decisions until February 1, 2014 and April 16, 2014, respectively.

With respect to the **August 2014** grievance, Defendants contend that it does not contain "factual details regarding each aspect of the offender's complaint including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE TIT. 20, § 504.810(b).  The grievance form itself only asks for a "Brief Summary of Grievance" and does not seek a detailed recitation of the events, or the names/description of offending parties, as outlined in the Code.  *See Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011).  Plaintiff grieved that his cell is insufficient.  The prison responded by indicating that his cell placement is an "administrative decision" – and the head administrators of the jail are the wardens.  As such, the failure to name a defendant "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.* at 722.  Thus, the grievance was sufficient to exhaust as to Plaintiff's claims against Lashbrook and Butler in Count 6.

This conclusion does not apply to Plaintiff's retaliation claim in Count 3 as to Lashbrook and Butler.  A close reading of the grievance reveals that Plaintiff was not complaining of any retaliation by these Defendants.  Plaintiff outlines that he is required to do exercise and that he

---

[5] Defendants appear to argue that Plaintiff was required to state, verbatim, in his grievances the counts that he alleges in this Court.  It is not necessary for grievances to parrot a complaint (or vice versa).  Rather, Plaintiff is only required to provide enough information to allow for corrective action prior to filing suit.  Counts 4, 5, and 6 all concern the conditions of Plaintiff's confinement and implicate the same salient fact: that Plaintiff was placed in a small cell that did not account for this medical condition.  Thus, Plaintiff's grievance concerning the conditions of his confinement, while not outlining the legal theories made by Plaintiff, or clarified by the Court, is sufficient to exhaust as to each of these Counts.

cannot do said exercises in his cell (which he had been moved to in November 2013).  He further asserts that he was *moved to* the cell in retaliation for lawsuits that he had filed.  There is no mention of Plaintiff's belief that he was kept in that cell by those Defendants in retaliation for his pursuit of litigation.  As such, this grievance does not exhaust as to Plaintiff's claims in Count 3 against Lashbrook and Butler.

Defendants also argue that the grievance is untimely, as found by the ARB.  Certainly, as to Plaintiff's belief that he was placed in the cell in November 2013 in retaliation, the grievance is untimely.  However, Count 6 covers the time period from when Plaintiff was assigned to the offending cell in November 2013 and continued until he was transferred to a new cell.  Thus, the conditions of confinement were on-going.  "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing."  *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).   A change in the person responsible for the unconstitutional conditions is a salient fact that may break the continuing violation allegation and necessitate a new grievance.  *See Burt v. Berner*, 2015 WL 1740044 (S.D. Ill. 2015).  As such, this grievance, while being untimely as to the initial placement in the offending cell, may not have been untimely as to Plaintiff's continued placement in that cell.  Even though it is Defendants' burden to show failure to exhaust, they do not parse out this distinction in their timeliness argument.  Plaintiff claimed that he was discussing his conditions with Lashbrook and Butler during unspecified times in 2014 and that he wrote this grievance at their urging.   As such, it is possible that this grievance was timely as to Plaintiff's conditions of confinements claim against Lashbrook and Butler (Count 6).  Plaintiff spoke to them and when they did not give him relief, he filed this grievance.  Defendants presented no evidence or argument to the contrary.

Plaintiff testified that he submitted an **October 14, 2014** grievance detailing the retaliation of Butler.  He stated that he received the grievance back within a week with a note stating that the issue was moot.  While not specified, the note presumably was written by his counselor.  Plaintiff did nothing further with this grievance.  While receiving a sticky note response is unorthodox, it is nonetheless a response and triggered the Illinois Administrative Code's requirement of submitting a formal grievance to the grievance officer.  Plaintiff did not take this required step (nor did he appeal the matter to the ARB if he believed that the response was from the grievance officer).  Therefore, Plaintiff did not take all the steps necessary to exhaust this grievance which relates to the claims against Butler in Count 3.  There is also no grievance that discussed Plaintiff's retaliation claim against Lashbrook in Count 3.

Finally, as to Count 7, Plaintiff failed to exhaust his remedies prior to filing suit.  Plaintiff submitted a grievance about the gym housing on January 4, 2016.  He appealed the jail's decision to the ARB no earlier than April 15, 2016; a date after the Second Amended Complaint was filed.  Plaintiff therefore failed to exhaust as to this count prior to filing suit.

Plaintiff makes the argument that Defendants have conceded that he exhausted as to Count 7 because they did not number the Counts in this matter consistent with the Court's Screening Order.  This argument along with Plaintiff's remaining arguments, are without merit or are not relevant to these proceedings.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Atchison, Butler, Harrington, IDOC, Lashbrook, and Smith (Doc. 78) on August 24, 2016 be **GRANTED IN PART and DENIED IN PART**, that Count 3 against Lashbrook and Butler, Count 7, and Defendant Smith be **DISMISSED WITHOUT**

**PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

If the District Court adopts this Report and Recommendation, the following counts would remain in this lawsuit:

> Count 3: Defendant Harrington retaliated against Plaintiff for filing lawsuits by moving him to the North Two Cell House, which has smaller cells, offers fewer privileges, and houses higher aggression inmates than other cell houses.

> Count 4: Defendants IDOC Director and Butler's policy, custom, or practice of making housing decisions without input from the medical staff violates Plaintiff's rights under the Eighth Amendment.

> Count 5: Defendant IDOC Director violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e, by denying him accommodations for his degenerative joint and disc disease and his obesity by placing him in a larger cell.

> Count 6: Defendants Harrington, Lashbrook, and Butler, subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they assigned him to the North Two Cell House.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: December 29, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**