IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:15-cv-850-NJR-DGW ) |
| DIRECTOR OF THE ILLINOIS DEPARTMENT OF CORRECTIONS, RICHARD HARRINGTON, KIMBERLY BUTLER, and JACQUELINE LASHBROOK, | ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by the Director of the Illinois Department of Corrections ("IDOC"), Richard Harrington, Kimberly Butler, and Jacqueline Lashbrook ("Defendants") (Doc. 174) and the Motion for Summary Judgment filed by Plaintiff Dennis Thompson (Doc. 178). For the reasons set forth below, both motions are granted in part and denied in part.

## BACKGROUND

Thompson, an IDOC inmate at Menard Correctional Center, is morbidly obese and suffers from a number of related health conditions. Since 2010, Thompson has complained to his doctor of back, neck, hip, and knee pain, for which he has received pain medication (*See* Doc. 178-2, pp. 44-54, Doc. 178-3, pp. 1-36). His doctor diagnosed him with myospasm of the cervical spine (muscle contractions), paresthesia (tingling sensation), mild polyarthritis, mild to moderate osteoarthritis, and degenerative changes (Doc. 178-2, pp. 32-34). Thompson's doctor believed that exercise and weight loss would improve his conditions and

symptoms and would be beneficial to his overall health.

On November 19, 2013, Thompson was moved from the South Cell House at Menard to the North Two Cell House ("North Two") (Doc. 175-1). Thompson claims that the cells in North Two are too small for him to do his exercises. Thompson also testified that while housed in North Two, he was subjected to other inmates' noises, including banging on desks/doors and singing "all day and night," which caused him anxiety, the inability to concentrate, and the inability to hear his own television (Doc. 178-5, p. 35). He was compelled to interact with inmates with higher aggressive levels and on segregation status. The gym in North Two was merely a converted lunch room with limited facilities. Walking on its concrete floor exacerbated his knee and hip pain, there was no separate area for weights, and there were only two basketball rims (*Id.*, p. 36). The gym was "basically useless" (*Id.*). In addition to the cells being too small to exercise in, Thompson's yard time and gym time were often cancelled due to lockdowns, weather conditions, and other reasons (Doc. 177).

Thompson claims that the decision to move him to North Two, and the subsequent refusal to move him back, was made by Defendants Harrington and Butler in retaliation for filing lawsuits. Thompson testified that he had a verbal run-in with former Warden Harrington and Defendant Butler shortly after he had been moved to North Two. Thompson testified that Warden Harrington said to him:

> Thompson, do you really believe me and my staff have time to be answering lawsuits? We take lawsuits and threats—and we take lawsuits as threats, and this is what we do to prisoners who file them. We put your ass back here in north 2 where you can sit with the psych and segregation staff as status prisoners and listen to them yell and beat on the bars and decks all day. Thompson, you had it made. You were in the South lower, the suburbs of the prison. I personally ordered for you to be moved back here. (Doc. 179-1, p. 112).

The lawsuits Warden Harrington was referring to were *Thompson v. Tourville, et al.*, 3:13-cv-333-NJR-DGW, *Thompson v. Nwaobasi, et al.*, 3:12-cv-770-MJR-PMF, and a case in the Central District of Illinois, *Thompson v. Pfister, et al.*, 13-3032-SEM-BGC (*Id.*, pp. 121-22). The *Nwaobasi* case had been dismissed for failure to pay the filing fee, and Thompson had written a letter to the trust fund office expressing his displeasure that his case had been dismissed due to the staff's inaction.

Thompson testified that Defendant Butler was with Harrington during this entire conversation. It is clear from Thompson's testimony, however, that Butler was unaware of both his litigation history and the letter he sent to the trust fund office regarding the dismissed case (Doc. 179-1, p. 112). There is no evidence Butler had anything to do with Thompson's transfer or any knowledge of his previous lawsuits prior to his transfer.

During this same conversation, Thompson conveyed to Butler and Harrington that his cell does not accommodate his exercise and medical needs (*Id.*, pp. 112-13). He explained that he had degenerative joint disease in his spine, shoulders, and knees, and that he needed to exercise throughout the day (*Id.*, p. 113). He demonstrated to them that his cell—which was only 4'6" wide and 10'6" long—was so narrow he could not exercise as medical professionals have instructed him to do (*Id.*; Doc. 178-2, p. 5).[1] In response, Warden Harrington said: "Thompson, you should have thought about all this before you filed those lawsuits" (Doc. 179-1, p. 113). He also told Thompson he would not contact the healthcare unit regarding Thompson's medical needs (*Id.*, pp. 113, 131).

---

[1] Thompson's cell in the South House was much bigger and accommodated exercise (Doc. 179-1, p. 120). In that cell, he could perform range of motion exercises (standing and while lying down on the floor), toe touches, walking, and other exercises he had been instructed to do by medical staff (*Id.* at pp. 120-21). As a result, he was able to exercise anywhere from 90 to 240 minutes throughout the day (*Id.*, p. 121).

Harrington's term as Warden of Menard ended on April 16, 2014 (Doc. 175, p. 3). That same day, Kimberly Butler became the Warden, and Jacqueline Lashbrook became the Assistant Warden (Doc. 175, p. 3). Thompson avers that "at one time or another" he told each Defendant about his medical conditions, the exercises he was directed to perform, and medical records that confirm the same (Doc. 179-1, p. 101). However, "each Defendant stated to me that they did not care about my medical condition or housing needs as I should have thought about my medical needs (housing as well) before I filed the suits I had filed and 'threaten' to file more" (*Id.*).

Since his move to North Two, Thompson's cell conditions and lack of exercise have caused him to walk with a noticeable limp, he is in pain, and he has a loss of range of motion in his hip (Doc. 178-5, p. 36; Doc. 178-3, p. 31). Medical records from 2014 forward reveal complaints of neck pain, arthritis, shoulder pain, hip pain, and back pain. Various radiographic reports reveal degenerative changes in his spine, knee, shoulder, and hip (Doc. 178-3, pp. 23-26).

While his physical state was determined to be "normal" on May 30, 2015, Thompson's complaints of generalized joint pain appear to be unremitting (Doc. 178-3, pp. 3). A December 2015 radiographic report noted progression of degenerative disc disease in his lumbar spine (*Id.*, p. 27). The following month, another report revealed moderate to severe osteoarthritis in the right hip (*Id.*, p. 28). In March 2016, a prison doctor referred Thompson for an orthopedic referral for hip pain and apparent hip dysplasia (Doc. 178-3, p. 18). The consultation revealed "acetabular dysplasia of the right hip," and it was recommended that he be given pain medication and physical therapy (*Id.*, p. 32). A subsequent request for a consultation with a specialist was denied by medical personnel in June 2017 (*Id.*, p. 22). In August 2017,

Thompson's physical therapist gave him instructions on how to perform various exercises (Doc. 178-5, p. 30). The instructions outline standing and sitting range-of-motion exercises to be performed twice a day (*Id.*).

After various court orders, Thompson is now proceeding in this lawsuit on four counts (Docs. 16, 109). In Count 3, Thompson claims Defendants Harrington and Butler retaliated against him for filing lawsuits by moving him to North Two and by refusing to transfer him out of North Two, in violation of the First Amendment. In Count 4, Thompson claims the IDOC Director and Defendant Butler's policy, custom, or practice of making housing decisions without input from the medical staff violates his rights under the Eighth Amendment. In Count 5, Thompson asserts the IDOC Director violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and/or the Rehabilitation Act, 29 U.S.C. §§ 794-94e (the "RA"), by denying him accommodations for his degenerative joint and disc disease and his obesity by placing him in a larger cell. Finally, in Count 6, Thompson avers Defendants Harrington, Lashbrook, and Butler subjected him to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they assigned him to the North Two Cell House.

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

### DISCUSSION

**I.    Count 3: Retaliation**

In Count 3, Thompson alleges that Defendants Harrington and Butler retaliated against him for filing lawsuits by transferring him to North Two cell house and later refusing to move him out of North Two.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Thompson has a First Amendment right to file grievances and lawsuits. *Id.*; *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In order to prevail on his claim of retaliation, Thompson must show: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). In other words, Thompson must set forth a chronology of

events demonstrating his lawsuits were a motivating factor for an adverse action. *DeWalt*, 224 F.3d at 618. In this context, an adverse action is one that would chill or deter a person of ordinary firmness from exercising a First Amendment right. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Once Thompson meets his burden, the burden shifts to Defendants to show that the harm would have occurred anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

### A. Placement in North Two and Refusal to Transfer

Here, it is undisputed that Thompson engaged in First Amendment activity, namely, the three federal lawsuits he filed. Thompson also has presented evidence that he suffered a deprivation in that he was moved to the extremely undesirable North Two cell house. That deprivation could deter a person of ordinary firmness from exercising his First Amendment rights. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983."); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (discussing retaliation transfers).

Finally, Thompson has presented evidence that his lawsuits were the motivating factor for his initial placement in North Two by Defendant Harrington and the decision to keep him there by Defendant Harrington and Defendant Butler.[2] Thompson testified that Harrington said he specifically moved him to North Two because Thompson had filed several lawsuits. Thompson also testified he had a conversation with Harrington and Butler after he was moved to North Two, wherein he complained about his situation, and

---

[2] As to Defendant Butler, there is no evidence she was personally aware of Thompson's litigation activity prior to his cell transfer or that she was responsible for the initial transfer. As such, there is no evidence that she was personally involved in the retaliatory transfer.

Page **7** of **19**

Harrington told him he "should have thought about all this before you filed those lawsuits." (Doc. 179-1, p. 113). He further testified that at one time or another he told Harrington and Butler about his medical conditions, the exercises he was directed to perform, and medical records that confirm the same, but was told that he should have thought about that before he filed those lawsuits (*Id.*, p. 101). And, Thompson attests in his affidavit that he later spoke with Butler about his situation in North Two, but her position was that his lawsuits got him moved to North Two in the first place, and she was not going to move him simply because Harrington had retired (Doc. 178-5, p. 37).

Defendants' only response to Thompson's evidence is to argue that it is self-serving and uncorroborated by evidence in the record. The Court disagrees. Thompson testified, under oath, at his deposition as to the substance of these conversations. That Defendants have not presented any testimony or other evidence to dispute that those conversations occurred does not make Thompson's evidence "uncorroborated." It means his evidence is undisputed. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("a self-serving affidavit supported by facts in the record could defeat summary judgment"). In fact, the *only* piece of evidence cited by Defendants in their statement of uncontroverted facts is what they call Thompson's Living Unit History, an untitled spreadsheet that lists Thompson's cell transfer on November 19, 2013, as "routine" as opposed to "medical reason," "transfer," or "furlough." (Doc. 175-1, p. 1). Defendants make no argument whatsoever that this spreadsheet creates an issue of fact as to why Thompson was transferred or that it refutes Thompson's deposition testimony.

Thompson has presented evidence setting forth a *prima facie* case of retaliation, and Defendants have failed to rebut the inference raised by Thompson's evidence. Accordingly,

Thompson is entitled to summary judgment on his claim against Defendant Harrington that he transferred Thompson to North Two in retaliation for filing lawsuits and his claim against Defendants Harrington and Butler that they refused to move him out of North Two in retaliation for filing lawsuits.

### B. Qualified Immunity

Defendants also briefly claim they are entitled to qualified immunity, but they provide no substantive argument in support of their position. Qualified immunity protects government officials from civil damages liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Stinson v. Gauger*, 868 F.3d 516, 522 (7th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed. *Id; see also Richardson v. McKnight*, 521 U.S. 399, 403 (1997). In this case, it was clearly established that Thompson had a right to be free from retaliation for exercising his constitutional rights. *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). Thus, Defendants are not entitled to qualified immunity.

### II. Count 4: Policy and Practice

In Count 4, Thompson claims the IDOC Director and Defendant Butler maintain a policy or practice of not taking into account an inmate's medical needs prior to making housing decisions, thus violating the Eighth Amendment. Defendants' only argument in response is that the IDOC Director and Defendant Butler are shielded from suit by the Eleventh Amendment and sovereign immunity.

Defendants are correct that states and state agencies enjoy Eleventh Amendment immunity from Section 1983 suits for money damages filed in federal court absent some exceptions not relevant here. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995). A state also cannot be held liable under a *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658 (1978) theory because it is not a municipality or local government unit. However, Thompson also seeks prospective injunctive relief, for which the State of Illinois is not immune. *Id.*; *Ex Parte Young*, 209 U.S. 123 (1908). And, while it may be redundant to name both the IDOC Director and Butler, Defendants have not made this argument. Defendants also make no argument as to whether Butler or the IDOC Director are being sued in their individual capacities. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002) ("[I]ndividual capacity suits do not implicate the Eleventh Amendment's protections, making an *exception* to Eleventh Amendment immunity obviously unnecessary."). And, finally, Defendants have made no argument as to the substance of this claim. They are, accordingly, not entitled to judgment on Count 4. Likewise, because they have made no argument regarding Thompson's substantive claims in Count 4, they also are not entitled to qualified immunity on this count.

At the same time, Thompson is not entitled to summary judgment on this claim either, as he has provided no evidence of a *widespread* policy or practice. *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("An official policy or custom may be established by . . . a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy").

III. **Count 6: Eighth Amendment Claim**

The Court next addresses Thompson's Eighth Amendment conditions of confinement claim against Defendants Harrington, Lashbrook, and Butler because it may affect the analysis of his ADA claim. *See Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010) (explaining that Title II of the ADA creates a private cause of action for damages against states only for conduct that violates the Constitution). Thompson asserts the conditions of his confinement are unconstitutional because his cell is too small to exercise in.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishment clause. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993). First, the prisoner must show that, objectively, the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Second, from a subjective point of view, the inmate must demonstrate that the defendants acted with a sufficiently culpable state of mind. *McNeil*, 16 F.3d at 124.

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Conditions of confinement may be considered in combination with each other when each standing alone would not violate the Eighth Amendment. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

In this case, there is a question of fact as to whether Thompson was subjected to cruel and unusual punishment with respect to the conditions of his confinement. Thompson has presented some evidence from which a jury could conclude that by placing him in a small

cell with a cellmate, he was deprived the opportunity to exercise in a manner directed by medical personnel. *See Antonelli v. Sheahan*, 81 F3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). There is evidence that Thompson is housed in a cell that is 4'6" wide and 10'6" long and that he had a cellmate until at least May 17, 2017 (Doc. 178-5, p. 15). Because of his obesity, he was unable to comfortably move around his cell, let alone exercise in his cell. The evidence also reveals that while there is no actual medical order directing Thompson to exercise in his cell daily, medical personnel did direct him to exercise multiple times a day in order to manage his weight and his symptoms of pain (*see* Doc. 178-5, p. 30).

There is also evidence that the exercise he is permitted outside of his cell is insufficient for his particular medical conditions. The record indicates Thompson was subjected to lockdowns and cancellations of yard and that he was otherwise allowed yard only two times per week (Doc. 178-5, p. 32). Furthermore, a jury could find that Defendants Harrington, Lashbrook, and Butler were deliberately indifferent to these conditions because they knew about his cell size, lack of sufficient recreation opportunities outside of his cell, and the effect that it would have and did have on his health. Thompson stated that he told them about the effect of the lack of exercise on his health and that he had visible symptoms, like limping, which they observed.

On the other hand, a jury could find that Defendants did not act with a sufficiently culpable state of mind or ignored his complaints about the lack of exercise. There is evidence that Defendant Lashbrook wrote Thompson a memo in September 2014 in response to his "exercise issue," explaining the yard and recreation schedules were being adjusted for the

fall and winter (Doc. 178-2, p. 3). And, a jury could find that no medical personnel informed Defendants that Thompson was required to exercise more than any other inmate such that their housing decisions could be considered cruel and unusual. The Court is mindful that "a state may confine a prisoner as closely as it wants," so long as it comports with the Eighth Amendment's prohibition on cruel and unusual punishment. *See Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991).

The Court also questions whether Defendants are entitled to qualified immunity on this claim. In reviewing qualified immunity, the Court must consider two questions: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, 2. was "the right clearly established?" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted). "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A plaintiff has the burden of establishing that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

While Thompson need not point to an identical case, he must show that "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In making this determination, the Court looks to existing Supreme Court precedent, then Seventh Circuit precedent, and then other case law to determine "whether there was such a clear trend in the caselaw that we can say with fair

assurance that the recognition of the right by a controlling precedent was merely a question of time." *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989).

In this case, Thompson claims he was deprived of a minimal, civilized measure of life's necessities when he was prevented from exercising in his cell in order address his medical issues. *See Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (stating that the right asserted must be stated with sufficient specificity). Thompson has not addressed whether Defendants are entitled to qualified immunity on such a claim, nor has he presented any case authority to establish that his right was clearly established.

Certainly, it is clearly established that a prisoner must have the opportunity to exit his cell in order to exercise. *See Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997) (finding that 70 days' confinement in a cell can implicate due process rights). However, double-celling is not *per se* unconstitutional. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Nor is the size of Thompson's cell *per se* unconstitutional. *Smith v. Fairman*, 690 F.2d 122, 124, 126 (1982) (finding double-celling with cells ranging from 45 to 55 square feet was not unconstitutional). The Seventh Circuit in *Antonelli*, however, described conditions where the inmate went seven weeks without recreation, thereafter being allowed only one, one-hour session of exercise every two weeks, and living in a unit the size of a "small house trailer" with 37 other inmates with "no room to recreate" as stating a claim. *Antonelli*, 81 F.3d at 1432; *see also Winger v. Pierce*, 325 F. App'x 435, * 1 (7th Cir. 2009) (finding that "an unjustified, lengthy deprivation of opportunity for out-of-cell exercise could reasonably be described as cruel and, by reference to the current norms of American prisons, unusual"). And, in *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013), the Court found that the cumulative effect of lockdowns preventing yard privileges coupled with a cell too small for exercise stated a claim.

Here, there is evidence that Defendants knew of Thompson's medical and mobility issues, they knew Thompson could not exercise in his cell, and they knew he was being deprived of yard and gym privileges on a regular basis. On this record, and based on the case law of this Circuit, the Court cannot conclude that Defendants are entitled to qualified immunity.

## IV. Count 5: ADA and RA claims

Title II of the Americans with Disabilities Act states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). State prisons fall within this definition. *Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998).

Similarly, the Rehabilitation Act prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e; *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). The relief available to a plaintiff under the Rehabilitation Act is coextensive. *Compare* 29 U.S.C. § 794A with 42 U.S.C. § 12117 (both incorporating 42 U.S.C. § 2000e–5 for private right of action); *see Barnes v. Gorman*, 536 U.S. 181, 189 & n. 3 (2002). The analysis governing the ADA and the RA is the same except that the RA includes as an additional element the receipt of federal funds, which all states accept for their prisons. *See Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005); *Gratzl v. Office of Chief*

*Judges*, 601 F.3d 674, 678 (7th Cir. 2010); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004); *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001).[3]

A plaintiff will make out a *prima facie* case of discrimination under the ADA or RA by showing he: (1) suffers from a disability as defined in the statute; (2) is qualified to participate in the program in question; and (3) was either excluded from participating in or denied the benefit of that program based on a disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 77 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.

Defendants first argue Thompson is not a qualified individual with a disability. The Court is not persuaded. "Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Id.* Thompson clearly is limited by his obesity in addition to an array of medical conditions including arthritis, hip dysplasia, and joint disease. Thompson specifically has provided evidence that he has difficulty walking because of his conditions. On this record, the Court finds that Thompson is a qualified person with a disability.

Defendants next argue that Thompson is not being denied access to any service, program, or activity because cell assignments do not fall into that category. Instead, they argue, Thompson is complaining about incomplete treatment of his degenerative diseases and obesity, and the ADA does not create a remedy for medical malpractice. They rely on

---

[3] At this time, the Court need not address the sovereign immunity question with respect to the ADA claim because of the above findings with regard to Thompson's Eighth Amendment claims. *See United Sates v. Georgia*, 546 U.S. 151, 159 (2006); *see e.g.*, *Cunningham v. Falmier*, No. 17-cv-126-SMY, 2017 WL 1212067, at * 4 (S.D. Ill. 2017).

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) in which the Court stated:

> Even if there were (as we doubt) some domain of applicability of the Act to prisoners, the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation. Unlike the prisoner plaintiffs in *Love v. McBride*, 896 F.Supp. 808 (N.D.Ind.1995), or *Donnell v. Illinois State Bd. of Education*, 829 F.Supp. 1016, 1020 (N.D.Ill.1993), he is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.

*Id.* at 249. Defendants' reliance on *Bryant* is misguided. Thompson is not attempting to state a claim for inadequate medical care. He is complaining that he was denied the ability to exercise because his cell is too small and his yard and gym time in North Two were often cancelled. He further claims that Defendants were aware of his medical conditions, that he requested an accommodation (a larger cell in which to do his ordered exercises) based on his disability, and that they failed to accommodate his disability.

Defendants have a duty to accommodate Thompson's disability. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). And, "it is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). As such, Defendants are not entitled to summary judgment on this count.

At the same time, judgment is also not appropriate for Thompson. As discussed in *Morris*, Title II of the ADA creates a private cause of action for damages against states only for conduct that violates the Constitution. *Morris*, 368 F. App'x at 689. Furthermore, to collect

damages in a Rehabilitation Act or ADA case, Thompson must prove that Defendants' discrimination was *intentional*. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). The standard for establishing intentional discrimination is deliberate indifference. *Lacy*, 897 F.3d at 863 ("We now agree with the majority of courts that have spoken on the question and hold that a plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference.").

Because Thompson has not been granted summary judgment on his Eighth Amendment deliberate indifference to his conditions of confinement claim, and because there is a question of fact as to whether Defendants' discrimination was intentional, he is not entitled to summary judgment on his Rehabilitation Act or ADA claims for damages. To the extent he is seeking prospective injunctive relief, there is little evidence explaining his current living situation. The Court will determine whether Thompson is entitled to such relief after reviewing the evidence at trial.

## Conclusion

For the reasons set forth above, Defendants' motion (Doc. 174) is **GRANTED in part and DENIED in part** and Plaintiff Dennis Thompson's motion (Doc. 178) is **GRANTED in part and DENIED in part**. Judgment is **GRANTED** in favor of Thompson on Count 3 and against Defendant Harrington. Judgment is also **GRANTED** in favor of Thompson on Count 3 and against Defendant Butler, but only as to his claim that she refused to transfer him out of North Two in retaliation for filing lawsuits. Defendant Butler is **GRANTED** judgment on Count 3 solely as to Thompson's claim that he was initially placed in North Two as retaliation for filing lawsuits. Judgment is **DENIED** in all other respects.

This matter shall proceed to trial on:

**Count 3:** Damages only.

**Count 4:** Defendants IDOC Director and Butler's policy, custom, or practice of making housing decisions without input from the medical staff violates Plaintiff's rights under the Eighth Amendment.

**Count 5:** Defendant IDOC Director violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e, by denying him accommodations for his degenerative joint and disc disease and his obesity by placing him in a larger cell.

**Count 6:** Defendants Harrington, Lashbrook, and Butler subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment, when they assigned him to the North Two Cell House.

Magistrate Judge Wilkerson is **DIRECTED** to recruit counsel to represent Thompson at trial. A status conference will be set by separate order for the purpose of scheduling this case for a final pretrial conference and jury trial.

Finally, the parties are reminded of the availability of a magistrate judge to conduct the trial in this case should they wish to consent.

**IT IS SO ORDERED.**

DATED: September 27, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**